In re Anthony Albert WILLIAMS, Debtor.

Florica RADIVOJ, as Personal Representative of the Estate of George Radivoj, deceased, and Florica Radivoj, individually, Plaintiff,

v.

Anthony Albert WILLIAMS, Defendant.

Bkrtcy. No. 87–03671–BKC–AJC.
Adv. No. 88–0418–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

April 25, 1989.

Scott P. Schlesinger, Fort Lauderdale, Fla., for plaintiff.

William C. Stallions, Fort Lauderdale, Fla., for debtor/defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This cause having come before the Court on February 23, 1989 upon the creditor/plaintiff, Florica Radivoj's complaint to determine the dischargeability of a debt owed by the debtor/defendant, Anthony Albert Williams, pursuant to 11 U.S.C. section 523(a)(9), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby

ENTER the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This adversary action arose from a two boat collision on April 10, 1983 which occurred shortly after nine o'clock in the evening at the intersection of the Intracoastal Waterway and the Dania Cutoff Canal in the city of Hollywood, Florida.

2. Boat # 1 was a twenty-four foot Donzi open fisherman owned and operated by the debtor, Anthony Albert Williams, an experienced boater with over forty-five hundred hours and twelve years experience. Boat # 1 contained two occupants, Williams and a passenger, David Roderick.

3. Boat # 2 was a nineteen foot Fiberskiff owned and operated by George Radivoj, now deceased as a result of this accident. In addition to Radivoj, Boat # 2 contained Viorel Cinc, also deceased, and four survivors, John Balan, Radomir Penjevic, Joseph Javanov, and Leo Pank.

4. The impact was nearly head-on, and occurred approximately thirty feet from the western shore of the Intracoastal Waterway, either at or slightly north of the southern bank of the intersection of the Dania Cut-off Canal and the Intracoastal.

5. Boat # 2 had been fishing in the ocean off of Port Everglades and was returning to its point of origin at a launching ramp south of the Dania Cut-off Canal. It was proceeding southbound in the Intracoastal Waterway and adhering to the starboard (western) edge of the channel as required by U.S.C.G. Navigation Rule # 9, and was operating with proper running lights.

6. The exact status of Boat # 1 is less clear. It was definitely northbound in the Intracoastal Waterway and the operator intended to turn westbound into the Dania Cut-off Canal. The passenger, Roderick, stated that they were about half way through their turn into the Dania Cut-off Canal. The operator, Williams, stated that he "was getting ready to make a left turn to head east [sic] in the Dania Cut-off Canal." (Plaintiff's exhibit # 4, Statement of Anthony Albert Williams, page 17, line 9.) The investigating officer's report indicated that the physical damage to the Donzi was such that it indicated a straight and level attitude at impact, i.e., not turning.

7. As a result of this collision, Boat # 2's six occupants or their survivors sued Williams.

8. The defendant/debtor Williams has admitted, in his statement and his deposi-

tions, that he had been drinking beer and alcoholic mixed drinks throughout the evening prior to the boat crash. Williams' story was different in each statement and deposition as to exactly what and how much he drank that evening prior to the crash, but he admitted to consuming a total of four alcoholic beverages, and his various testimony left the possibility that he had consumed five or even more alcoholic drinks in the evening prior to the crash.

9. After the accident, Williams was requested by the authorities to consent to a blood alcohol test to determine the alcoholic content of his blood. Williams refused to consent to this request.

10. Florica Radivoj filed suit against Williams on July 11, 1983, as the personal representative of the estate of George Radivoj, deceased, and in her own right.

11. On April 6, 1984, Williams incorporated his business with his wife as the sole director and officer.

12. In July of 1986, the Broward County Circuit Court entered a judgment in the amount of $2.1 million for the Plaintiff, Florica Radivoj against the defendant Williams, based upon a jury verdict, in the case *Radivoj v. Williams*.

13. On October 13, 1987, Williams declared voluntary Chapter 7 bankruptcy and became the debtor in this case.

14. On August 18, 1988, Florica Radivoj filed this adversary proceeding to except the state court judgment in *Radivoj v. Williams* from discharge pursuant to 11 U.S.C. § 523(a)(9).

15. At the adversary trial, Williams admitted to having drunk four alcoholic drinks throughout the evening prior to the boat crash. All of the witnesses at this trial who had contact with Williams just prior to and after the accident, testified that in their opinion, on the evening of the accident, Williams was either impaired or intoxicated or drunk at the time of the accident. These witnesses testified that on the evening of the accident, Williams had the odor of alcohol on his breath, that Williams' eyes were red or bloodshot, that Williams was either dazed or incoherent or not fully aware of his surroundings, and that he staggered and needed help getting out of his boat. Two of the witnesses were Hollywood police officers Davis and Brewer, who testified that in their opinion Williams was impaired by alcohol in his ability to safely operate a motorboat. Also testifying were Charlie and Douglas Daniels, two brothers who were first on the scene immediately after the accident. Charles Daniels worked as a licensed practical nurse at the time of the accident, and had extensive experience with drunk, impaired, and intoxicated people. This experience, combined with his having the opportunity to observe the debtor, led him to the opinion that Williams was indeed intoxicated at the time of the accident. Finally, David Roderick, the only passenger in Williams' boat, also testified that he believed that Williams was impaired or intoxicated by alcohol on the night of the accident, and in fact had observed Williams drinking alcohol prior to the accident.

## CONCLUSIONS OF LAW

■ 11 U.S.C. § 523(a)(9) excepts from discharge any judgment wherein liability is "incurred by the debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws of or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred." This Court concludes that the intent of Congress was to protect the public from drunken drivers. In this context the Court finds little distinction between a highway, an airway, and a waterway, or between an automobile, an airplane, and a boat. The defendant has argued that the law of Florida does not contemplate a boat as a motor vehicle. That argument is rejected. The applicable definition is the intent of Congress in framing the wording of the statute, not the parochial view of the individual states as to their meaning. A motorboat is a motor vehicle within the meaning of section 523(a)(9).

■ The debtor, Williams, denies he was intoxicated at the time of the boat crash,

but admits he was the operator of the motorboat that was liable for the collision with the creditor's decedent. Therefore, the only issue remaining for this Court to determine is whether the debtor was legally intoxicated under the laws of the State of Florida when he incurred the liability of the boat accident.

In the State of Florida, a person is illegally under the influence of alcoholic beverages while operating a vessel or while driving a motor vehicle, when the person is affected to the extent that his normal faculties are impaired, or when the person's blood alcohol level is 0.10 percent or higher. Fla.Stat. §§ 327.35 (1983), 316.193(1) (1983). In this case, since the debtor's blood alcohol level on the night of the accident is not known, the question of whether Williams was legally intoxicated turns on whether he was affected by his drinking on that night to the extent that his normal faculties were impaired.

The Court finds that the Plaintiff carried her burden on the factual issue of intoxication. Although no chemical analysis of the debtor's blood, urine, or breath was performed, there was ample opinion testimony/evidence as to Williams' intoxication and the impairment of his normal faculties by alcohol, based on observations of Williams at and about the time of the accident. The testimony was satisfactorily grounded in the witnesses' observations of the debtor. As stated above, all of the witnesses who had an opportunity to observe Williams on the night of the crash stated that Williams was either impaired or intoxicated. This type of evidence is sufficient to establish that the debtor was legally intoxicated at the time of the boat accident which gave rise to the state court judgment. *Matter of Brunson*, 82 B.R. 634 (Bankr.S.D.Ga.1988). In *Brunson*, a case substantially similar to the case at bar, the Bankruptcy Court for the Southern District of Georgia held that even though there were no blood tests to show the blood alcohol level of the debtor at the time of the accident, legal intoxication under the state statute could be shown by sufficient circumstantial evidence. 82 B.R. at 636. The state statute in that case was also substantially similar to the statutes applicable in this case, i.e., intoxication could be proven by showing either a blood alcohol level of a certain percentage, or that the person was under the influence of alcohol or any drug to a degree rendering him incapable of driving safely. *Id.*

Based on the testimony of the witnesses at this bankruptcy trial, and based on the debtor's admission to consuming four alcoholic drinks prior to the accident, the Court finds that Williams was affected by his drinking to such an extent that his normal faculties were impaired.

Based on the foregoing, the Court finds that the Broward judgment in favor of Radivoj and against Williams is not a dischargeable debt under 11 U.S.C. § 523(a)(9), because it is a judgment entered in a Court of record "against the debtor wherein liability was incurred by the debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws of a jurisdiction within the United States ... wherein such motor vehicle was operated and within which such liability was incurred."

A final judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED

That the court having found that the judgment rendered by the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida in Case Number 83–14588 CU, *Radivoj v. Williams*, was a judgment entered in a Court of record against the debtor wherein liability was incurred as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws of Florida wherein such motor vehicle was operated and within which such liability was incurred, the same is hereby

EXCEPTED FROM DISCHARGE.

DONE AND ORDERED.