**In re Timothy W. HUMPHREY, Debtor.**

**ALLSTATE INSURANCE COMPANY, Plaintiff,**

**v.**

**Timothy W. HUMPHREY, Defendant.**

**Bankruptcy No. 3–88–00188.
Adv. 3–88–0057.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 23, 1989.

Christopher M. Hawk, Dayton, Ohio, for debtor/defendant.

Timothy Dempsey, Cleveland, Ohio, for plaintiff.

## DECISION GRANTING JUDGMENT TO PLAINTIFF AND FINDING DEFENDANT'S DEBT TO PLAINTIFF NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(9)

WILLIAM A. CLARK, Bankruptcy Judge.

This adversary proceeding is before the court for a decision based upon the evidence presented at trial. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter concerns the determination of the dischargeability of a debt owed by Defendant to Plaintiff and is, therefore, a core matter under 28 U.S.C. § 157(b)(2)(I). This opinion and order shall constitute the findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The complaint of Allstate Insurance Company (Plaintiff) alleges that Timothy W. Humphrey (Defendant/Debtor) owes a debt which is nondischargeable under section 523(a)(9) of the Bankruptcy Code as a result of Defendant's operation of a motor vehicle while legally intoxicated. As recited in this court's pretrial order, the. following facts are regarded as uncontroverted by the parties:

(a) Plaintiff obtained a judgment against the defendant which resulted from the accident on November 14, 1986 involving plaintiff's insured.

(b) The Montgomery County Common Pleas Court judgment (Case No. 87–3945) and a payment by the defendant established damages in the amount of $4,024.27.

(c) The defendant was cited for a violation of O.R.C. Section 4511.19(A)(1), Ohio's drunk driving statute.

(Doc. 16 at 2).

### TESTIMONY AT TRIAL

Patrolman Nat Goldwasser, an officer with the Madison Township, Montgomery County, Ohio, Police Department, was called as a witness by the plaintiff. The following is a summary of his testimony:

When Officer Goldwasser arrived at the scene of the accident, the defendant and the driver of the car struck by the defendant were engaged in conversation. Shortly thereafter, another individual informed Officer Goldwasser that the defendant had also run into that individual's car on the same street. There was an odor of alcohol about the defendant. The defendant was staggering somewhat, could not keep his balance without some assistance and was not steady when leaning against a car.

Officer Goldwasser decided to administer a field sobriety test to the defendant. The defendant was unable to repeat the alphabet "without bouncing letters back and forth." During the eye test, Officer Goldwasser observed that the defendant's "eyeballs were bouncing a little bit" and that the defendant could not successfully focus on the point of a pen. The defendant was also unable to perform a heel-to-toe test satisfactorily. In addition, the defendant's speech was slurred.

After the field sobriety tests were performed, Officer Goldwasser placed the defendant under arrest for driving under the influence of alcohol and transported him to the police department. Subsequently, the defendant was requested to take a urine test, but refused. The defendant was issued a citation for driving while under the influence and failure to control. At a later date the defendant entered a guilty plea to reckless operation and failure to control.

Upon cross-examination, Officer Goldwasser acknowledged that he "could not tell" whether the defendant was "legally intoxicated" under the laws of the State of Ohio.

After the close of the plaintiff's case, the defendant took the stand and testified as follows:

On the night of the accident, he had invited several friends to his house after

work. He drank beer between the hours of 6 o'clock and 10 o'clock, but did not know how much he drank. When asked whether he had consumed 3, 4 or 5 beers, he acknowledged that that was possible, but that he wasn't sure how many he drank. Shortly after 10 o'clock, the defendant took some friends to their home in his car. The accident occurred after the defendant had taken his friends home, but the defendant remembers very little of the accident and the period following it.

As a result of the accident, the defendant suffered a broken front tooth, causing him to speak with a "lisp." The defendant testified that he has arthritis of the spine which makes it difficult for him to stand straight at times. The force of the collision caused the front end of the defendant's automobile to be severely damaged and it was almost impossible to open the hood of the car without a crow bar. The defendant was able to recall that he was requested to take a chemical test and that he refused to do so.

## CONCLUSIONS OF LAW

Section 523 of the Bankruptcy Code provides that an individual debtor is not discharged from any debt—

> (9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred.

11 U.S.C. § 523(a)(9).

Initially, the court must determine whether the plaintiff must prove the elements of § 523(a)(9) by clear and convincing evidence or by a preponderance of the evidence. In this court's view, the Sixth Circuit has not unequivocally addressed the issue of the burden of proof in section 523(a) proceedings. *In Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1165 (1985), the Sixth Circuit explicit-

ly stated that "[t]he party seeking an exception from discharge under section 523(a)(2) has the burden of proof by clear and convincing evidence," but did not elaborate upon this statement nor indicate whether a clear and convincing standard of proof is appropriate for the remaining exceptions to discharge under section 523(a). More recently, however, the Sixth Circuit stated, without qualification, that a creditor, "as the party *seeking an exception from discharge* in bankruptcy, had the burden to prove reliance by clear and convincing evidence." *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988) (emphasis supplied). Although this statement is sufficiently broad to support the proposition that clear and convincing evidence is required under all of the discharge exceptions enumerated under section 523(a), this court is persuaded by the comments of The Honorable Arthur J. Spector, U.S. Bankruptcy Judge, in discussing the standard of proof under section 523(a)(6), that such an expansive reading of the Sixth Circuit's statement is neither required nor desirable:

> At page 1083 of the opinion [*In re Ward*], the court stated, "MHT, as the party seeking an exception from discharge in bankruptcy, had the burden to prove reliance by clear and convincing evidence." In fact, its specific holding was that the lower courts' factual determination that "MHT failed to meet its burden of introducing clear and convincing evidence that it conducted even the most superficial credit investigation" was "not clearly erroneous". At p. 1084.

> The phrase, "as the party seeking *an exception* from discharge" (emphasis added) is troublesome. It is a generalization that could mean that all exceptions to discharge (including, presumably, that an assault was willful and malicious (§ 523(a)(6)); child support is owed (§ 523(a)(5)); a student loan debt is due (§ 523(a)(8)); a particular type of tax debt is owed (§ 523(a)(1)); a vehicular accident causing personal injury was the result of the debtor's drunkenness (§ 523(a)(9) must be proven by clear and convincing evidence. Perhaps the court

means just that. But since the case in which it made this "pronouncement" was just another false financial statement, i.e. fraud case like *In re Martin,* 761 F.2d 1163 (6th Cir.1985), I doubt it. This statement, too, then, is just *dictum,* and ought carry little weight in the determination of the appropriate standard of proof of this case. *Borg–Warner Acceptance Corp. v. Watkins (In re Watkins),* 90 B.R. 848, 850 n. 3 (Bankr.E.D. Mich.1988).

Because this court is not convinced that its own circuit court of appeals has decided the necessary degree of proof under section 523(a)(9), examination of other decisional law is appropriate. In particular, this court finds persuasive the rationale contained in *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988). Although *Combs* addresses the issue of the standard of proof required under section 523(a)(6), its rationale appears equally applicable to a consideration of the burden of proof under section 523(a)(9):

> The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge in § 523. In the face of this silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings. Although the "fresh start" philosophy of bankruptcy law requires that exceptions to discharge "be confined to those plainly expressed," (citation omitted), this policy does not justify judicial imposition of a heavier burden of proof on creditors seeking to have a debt determined nondischargeable under § 523(a)(6).
>
> Congress had reasons for enacting the exceptions to discharge in bankruptcy embodied in § 523. While bankruptcy proceedings are intended to afford debtors a "fresh start," the provision at issue here expresses Congress' determination that debts incurred as the result of a debtor's willful and malicious injury of another are of a type that bankruptcy ought not to forgive. The balance of these competing policies does not require a heightened standard of proof of the § 523 exception.... [W]e hold that the

policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the debtors' acts under § 523(a)(6) and by waiting for Congress, not the courts, to signal a departure from this standard. *Id.* at 116.

On the basis of the reasoning contained in *Combs,* this court concludes that the correct burden of proof under § 523(a)(9) is a preponderance of the evidence rather than clear and convincing evidence. *Accord, McGrath v. Carney (In re Carney),* 68 B.R. 655 (Bankr.N.H.1986).

\* \* \* \* \* \*

 Listed in the pretrial order as a contested issue of law is the question of whether section 523(a)(9) requires a conviction of the defendant on a drunk driving charge to find a debt nondischargeable. Although a guilty plea in state court may be used as evidence that a debtor incurred a liability as a result of driving while legally intoxicated, *Brunswick v. Cunningham (In re Cunningham),* 48 B.R. 641 (Bankr. W.D.Tenn.1985), there is nothing in the statute establishing a conviction of drunk driving as a prerequisite to nondischargeability. Nor must a state court civil judgment address the issue of a debtor's intoxication:

> Furthermore, the provisions of § 523(a)(9) do not require a precise legal determination by a state court that the liability was incurred as a result of the intoxicated use of a motor vehicle. The section requires merely that a *bankruptcy court,* in determining discharge, find that "a judgment or consent" cause a debtor liability "as a result" of the debtor's intoxicated use of a motor vehicle. The Court finds that as a matter of law, a bankruptcy court can make this determination based on a generic civil judgment with a specific underlying claim for liability arising from the intoxicated use of a motor vehicle. *Sickel v. Pahule (In re Pahule),* 78 B.R. 210, 212 (E.D. Wisc.1987), *aff'd,* 849 F.2d 1056 (7th Cir. 1988).

■ The court finds that the State of Ohio's decision to accept defendant's plea to a charge different from the original charge of driving while "under the influence" has no evidentiary value in this court's determination of whether the defendant was legally intoxicated at the time of his automobile accident.

\* \* \* \* \* \*

At the close of plaintiff's evidence, the defendant moved for a directed verdict and the court reserved decision on the motion. Because the trial was to the bench rather than to a jury, the motion is properly treated as a motion for involuntary dismissal for insufficiency of evidence under Fed.R. Civ.P. 41(b). *James v. DuBreuil*, 500 F.2d 155, 156 n. 2 (5th Cir.1974). After a motion for involuntary dismissal is made, "[t]he court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." Fed.R.Civ.P. 41(b). However, a denial of the motion "means nothing more than a refusal to enter judgment at that time. (citation omitted). It makes no difference whether the court expressly reserves decision on the merits or denies it." *SEC v. Murphy*, 626 F.2d 633, 659 (9th Cir.1980). Defendant waived his motion and the right to challenge its disposition when he proceeded to introduce evidence on his behalf. *A & N Club v. Great American Insurance*, 404 F.2d 100, 104 (6th Cir.1968). In any event, as shall be apparent from the discussion below, at the conclusion of plaintiff's evidence it could not be said that the plaintiff had shown no right to relief based upon the facts and the law in this case. Had the defendant elected not to present evidence, the court would have awarded judgment to the plaintiff based on the evidence presented by the plaintiff.

\* \* \* \* \* \*

The ultimate issue in this case is whether the defendant/debtor was "legally intoxicated" under the laws of the State of Ohio while operating his motor vehicle. Ohio law prohibits driving while under the influence of alcohol as well as driving with certain concentrations of alcohol in bodily substances:

(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse;

(2) The person has a concentration of ten-hundredths of one per cent or more by weight of alcohol in his blood;

(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;

(4) The person has a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine.

Ohio Rev.Code § 4511.19(A) (Page Supp. 1988).

■ In the instant matter, the defendant/debtor contends that because no chemical tests were performed there is no evidence that he was "legally intoxicated" under Ohio law. However, the state statute does not employ the term "legally intoxicated" and it becomes necessary to decide whether "driving under the influence," Ohio Rev.Code § 4511.19(A)(1), is legal intoxication within the meaning of section 523(a)(9) of the Bankruptcy Code. In *Dougherty v. Brackett*, 51 B.R. 987 (Bankr.Colo.1985), the court was confronted with the same problem as is before this court: none of the state's alcohol-related traffic offenses was termed "legal intoxication."

The court correctly observed, however, that—

[i]n enacting a statute to apply to the drunk driving laws of fifty different states, Congress could not have incorporated the legal terminology used by each state in defining the various offenses. Therefore, Congress chose the term "legally intoxicated" and then referred to each state's laws for a definition of that term. There is no indication that Congress intended to draw a distinction between degrees of intoxication. The purpose of § 523(a)(9) is to protect victims of

accidents caused by drunk drivers. To effectuate that purpose, this Court concludes that the various degrees of intoxication defined by [the Colorado statute] are all legal intoxication within the meaning of § 523(a)(9). *Id.* at 989.

*Accord, Waskiewicz v. Tuzzolino (In re Tuzzolino),* 70 B.R. 373 (Bankr.N.D.N.Y. 1987). This court believes the approach of *Dougherty* and *Tuzzolino* to be sound and finds that the types of alcohol-related traffic offenses included in Ohio Rev.Code § 4511.19(A), i.e. driving under the influence and driving with a prohibited concentration of alcohol, describe "legal intoxication" for purposes of section 523(a)(9) of the Bankruptcy Code.

Because no chemical tests were performed on the defendant/debtor, the court must determine whether the defendant was "under the influence" of alcohol at the time of his automobile accident. The standard instruction for juries in Ohio regarding "under the influence" is as follows:

> A person is under the influence of alcohol when he consumed some alcohol in such a quantity that it adversely affected his action, reactions, conduct, movements or mental processes to the extent that he was deprived of that clearness of mind and control of himself which he would otherwise have possessed.

Ohio Jury Instructions 225.19 (Anderson 1970).

This instruction appears consistent with an instruction found not to be erroneous by the Supreme Court of Ohio:

> Under the influence of alcohol covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in the consumption of alcohol and which tends to deprive the one so using it of the clearness of intellect and control of himself which he would otherwise possess. No matter what stage of intoxication a person may be in, if he drives a vehicle upon the public road, he becomes a menace to the public and subjects himself to the penalties of the statute. *State v. Hardy,* 28 Ohio St.2d 89, 90, 276 N.E.2d 247, 249 (1971).

■ In the instant proceeding, although the defendant does not remember how much alcohol he consumed, he admits that he drank beer for a 4–hour time period prior to operating his motor vehicle. Subsequently he collided with two other vehicles. Following the accident he slurred his speech, had difficulty standing, and failed the field tests administered by Officer Goldwasser. While defendant's involvement in the accident may have affected his ability to perform the heel-to-toe balance test, it does adequately explain his failing the eye test nor the alphabet test. Further, although the defendant testified that his loss of a tooth resulted in his speaking with a "lisp," this does not explain the "slurring" of words observed by Officer Goldwasser. Finally, it must be noted that the defendant refused to submit to a chemical test:

> The refusal of one accused of intoxication to take a reasonably reliable chemical test for intoxication may have probative value on the question as to whether he was intoxicated at the time of such refusal. *City of Westerville v. Cunningham,* 15 Ohio St.2d 121, 239 N.E.2d 40 (1968).

The court finds it reasonable to infer that the defendant's refusal to submit to a chemical test was indicative of a consciousness that he would fail the test. Defendant offered no explanation for his refusal.

Taken as a whole, the evidence establishes that the defendant consumed alcohol in a sufficient quantity to adversely affect his actions and conduct and to deprive him of the clearness of intellect and control of himself which he would otherwise possess. As a result, the court finds that the defendant was "under the influence" of alcohol at the time of his accident and "legally intoxicated" under the laws of the State of Ohio.[1]

---

1. At the hearing, Officer Goldwasser affirmed an earlier statement made by him in a deposi- tion that he could not tell whether the defendant was "legally intoxicated" under the laws of

For the foregoing reasons, the court finds that the debt of Timothy W. Humphrey to Allstate Insurance Company is nondischargeable under · 11 U.S.C. § 523(a)(9) and judgment will be entered in accordance with this decision.

the State of Ohio. Because it was not disclosed whether Officer Goldwasser understood the term "legally intoxicated" to include driving "under the influence," as well as driving with prohibited concentrations of alcohol, the court is unable to evaluate or utilize Officer Goldwasser's opinion with respect to whether the defendant was intoxicated.