**In re Arnold Blair DALE, Debtor.**

**Carmen Maria CONTRERAS, as Administrator and Personal Representative of the Estate of Flor Torres Osterman as Guardian for and on behalf of Carmen Lorena Duarte, a Minor Child, Plaintiff,**

v.

**Arnold Blair DALE, Defendant.**

**Bankruptcy No. 93–24840–BKC–PGH.
Adv. No. 95–0894–BKC–PGH–A.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 1, 1995.

---

Ilissa S. Gordon, Cruz & Gordon, Ft. Lauderdale, Florida, for defendant.

Diego C. Asencio, P.A., West Palm Beach, Florida, John W. Carroll, Palm Beach Gardens, Florida, for plaintiff.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS CAUSE** came before the Court upon Plaintiff's, Carmen Maria Contreras, as Administrator and Personal Representative of the Estate of Flor Torres Osterman as Guardian for and on behalf of Carmen Lorena Duarte, a minor child (the "Plaintiff"), Complaint to Object to Dischargeability of Debt Pursuant to 11 U.S.C. § 523 (the "Complaint"), and Defendant's, Arnold Blair Dale (the "Debtor"), Answer to Complaint (the "Answer"), and this Court having reviewed the Complaint, Answer, all other relevant pleadings, the supporting evidence and the exhibits, having considered the demeanor and testimony of the witnesses, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

This matter arose from an automobile accident on July 17, 1992, which resulted in the death of Flor Torres Osterman (the "Victim"). On the morning of July 17, 1992, the Debtor went to his place of employment at Advance Home Improvements. At approximately 2:00 p.m. that afternoon, the Debtor finished work and drank a couple beers at

Advance Home Improvements. He then left Advance Home Improvements and went to his mother's house to mow the lawn. After mowing the lawn, the Debtor returned to Advance Home Improvements until approximately 5:00 p.m. The Debtor then left Advance Home Improvements and went to the Durty Kurty's Bar where the Debtor by his own admission had at least two beers. At approximately 9:00 p.m., the Debtor drove to an apartment (the "Apartment") that he occupied with Deana Dessanti ("Ms. Dessanti"). On his way to the Apartment, the Debtor struck the Victim with his car.

The Victim was walking on the right side of the road on the way to a 7–11 convenience store to obtain milk for the Victim's friend. The accident occurred in a quiet neighborhood area which was not well lit. The Debtor struck the Victim from behind with such force that he severed the Victim's left leg and buttocks from her torso. The Victim's torso was thrown 55 feet while the left leg was thrown 91 feet from the point of impact. The Victim was struck with such force that the Debtor's car received a large indentation in the front and had its antenna torn off. The windshield of the car was cracked from the Victim's head hitting the windshield. Even though the Debtor admits hearing a large bump, he did not stop to see what he had hit. Instead, the Debtor drove to the Apartment. The Debtor's car was so severely damaged that it stopped running in the vicinity of the Apartment. The Debtor testified that he had to push his car into a parking spot.

Dr. Michael Bell, Medical Examiner for the Broward County Medical Examiner Department, testified that the Debtor was driving in excess of 50 miles per hour at the time of the accident. Dr. Bell reached this conclusion because the severance of the Victim's left leg would not have occurred unless the Debtor was driving at highway speeds. The speed limit at the scene of the accident, however, was 30 miles per hour.

After pushing the car into the parking spot, the Debtor "immediately" went into the Apartment. Upon entering, the Debtor walked directly to the phone in the kitchen and called the 911 operator stating that he believed he had hit "something."[1] The Debtor was on the phone with the 911 operator for approximately 14 minutes. While on the phone with the Debtor, the 911 operator dispatched a local police officer to the Apartment. Ms. Dessanti was in the Apartment when the Debtor arrived. Upon seeing the Debtor visibly upset, Ms. Dessanti paced back and forth between the living room and the kitchen while the Debtor was on the phone with the 911 operator. Ms. Dessanti testified that she observed the Debtor "most of the time" while he was on the phone. The police officer arrived while the Debtor was on the phone and took the Debtor into custody.

Upon taking the Debtor into custody, the police officers placed the Debtor into a police vehicle and ultimately transported the Debtor to Broward Community Hospital to have his blood tested. During this time, the Debtor had interaction with several police officers investigating the accident, all of whom testified that the Debtor had bloodshot eyes, slurred speech, smelled of alcohol and seemed confused. Based on their experiences and expertise, the police officers testified that in their opinion the Debtor was drunk. The test of the Debtor's blood alcohol content, which occurred at approximately 1:05 a.m., revealed that the Debtor's alcohol content was .10 percent. Dr. Lee Hern, PHD, who is the chief toxicologist for Dade County, Florida, testified that in his opinion, the Debtor's blood alcohol content was between .14 and .22 percent at the time of the accident with the most probable estimation being .17 percent.

The Plaintiff filed a complaint against the Debtor in the Circuit Court of the Seventeenth Judicial Circuit Court in and for Broward County, Florida (the "State Court") for compensatory and punitive damages arising from the wrongful death of the Victim. In December, 1994, a jury rendered a verdict in favor of the Plaintiff. The jury awarded Carmen Lorena Duarte one million dollars

1. A copy of a tape of this conversation was introduced into evidence and reviewed by the Court at the trial on this matter.

($1,000,000.00) in compensatory damages for the loss of parental companionship, instruction and guidance, as well as mental pain and suffering as a result of the death of the Victim. Furthermore, the jury assessed one hundred and ten thousand dollars ($110,-000.00) in punitive damages against the Debtor. On December 19, 1994, the State Court entered final judgments in the amount of $1,000,000.00 for compensatory damages and $110,000.00 in punitive damages (the "State Court Judgment").

On December 27, 1993, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Code"). On June 28, 1995 the Plaintiff filed the Complaint, which resulted in the commencement of this adversarial proceeding. Specifically, the Plaintiff seeks this Court's determination that the State Court Judgment should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) and § 523(a)(9).

■ This Court finds that only two facts are in dispute, both of which are related. First, the Debtor testified that his high blood alcohol content was the result of having consumed beer at the Apartment after the accident while on the phone with the 911 operator. Second, the Debtor asserts that he was not intoxicated at the time of the accident.

This Court does not find credible the Debtor's testimony that his blood alcohol content was the result of having consumed beer at the Apartment after the accident while on the phone with the 911 operator. Ms. Dessanti testified that although she did not see the Debtor the entire time he was in the kitchen on the phone with the 911 operator, she did see him "most of the time," and that at no time did she observe the Debtor drinking any beer. Furthermore, the Debtor testified at a deposition prior to trial that he left the empty beer can from which he was drinking on the kitchen counter top. However, neither Ms. Dessanti nor any police officers saw any beer cans on the counter top.

In addition, Dr. Hern testified that even if the Debtor had drunk one beer after the accident, his blood alcohol content would have still been slightly in excess of .10 percent. Furthermore, Dr. Hern testified that if the Debtor had drunk 2 cans of beer, the range would have still been .096 to .14 percent. If the Debtor had a blood alcohol reading of .08 at the time of the accident, he would have had to drink 2.6 to 3.8 beers during the fourteen minutes he was on the phone with the 911 operator in order to have had a blood alcohol reading of .10 percent at 1:05 a.m. Based on the foregoing, this Court does not find the Debtor's testimony credible. This Court, therefore, finds that the Debtor did not consume any beer after the accident while on the phone with the 911 operator. Furthermore, even if the Debtor had consumed a beer or two while he was on the phone with the 911 operator, the testimony of the witnesses and other evidence introduced at trial supports a finding by this Court that the Debtor was intoxicated at the time of the accident.

## II. CONCLUSIONS OF LAW

### A. THE DEBTOR'S DEBT IS EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. § 523(a)(6)

There is no dispute that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2). This adversary proceeding represents a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Since this is a core proceeding, this Court has jurisdiction to adjudge the whether the Debtor's State Court Judgment should be excepted from discharge pursuant to 11 U.S.C. § 523 of the Code.

■ The claims of nondischargeability asserted by the Plaintiff are based on 11 U.S.C. § 523(a)(6) and § 523(a)(9). It is well established that the moving party must establish an exception to discharge of a debt under 11 U.S.C. § 523(a)(6) and § 523(a)(9) by a "preponderance of the evidence." *Whitson v. Middleton*, 898 F.2d 950, 952 (4th Cir.1990); see also *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of evidence standard applies to all of § 523(a)'s exceptions).

■ According to 11 U.S.C. § 523(a)(6):

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Pursuant to the statute's plain language, this Court must find that both prongs of 11 U.S.C. § 523(a)(6) have been established if the State Court Judgment is to be excepted from discharge. Specifically, this Court must find that the Plaintiff has proven by a preponderance of the evidence that the Debtor's conduct was both willful and malicious.

Courts, which have considered the question of dischargeability of a debt resulting from damages or injuries inflicted on innocent victims by an intoxicated driver, have struggled to reconcile the "willful and malicious" requirements of 11 U.S.C. § 523(a)(6) with conduct generally considered to be grossly reprehensible. In fact, bankruptcy courts are not unanimous in their opinions as to whether or not driving under the influence, without more, constitutes conduct sufficiently "willful and malicious" as to mandate a finding of nondischargeability. See *State Farm Mutual Automobile Insur. Co. v. Larry Wayne Fielder (In re Larry Wayne Fielder)*, 799 F.2d 656 (11th Cir.1986) and cases cited therein.

■ In the context of the § 523(a)(6) exception to discharge, the Eleventh Circuit Court of Appeals has held that "willful" means intentional or deliberate and that "malice" can be established by a finding of implied or constructive malice; a showing of specific intent to harm another is not required. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988); *In re Ikner*, 883 F.2d 986, 991 (11th Cir.1989). Furthermore, bankruptcy courts have also held that a debtor's intentional act which causes harm may be characterized as willful and malicious for purposes of § 523(a)(6) of the Code despite the fact that no intent to harm the creditor can be shown. *In re Touchstone*, 149 B.R. 721, 726 (Bankr. S.D.Fla.1993). Based on the foregoing, this Court finds that a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute willful and malicious injury.[2]

■ The direct evidence in this case is that the Debtor would have had to consume numerous beers before the accident in order for his blood test to show a .10% blood alcohol content four hours after the accident. A conservative view is that the blood alcohol was .14% at the time of the accident but it could have been as high as .22%. The evidence of the medical examiner is that the Debtor was driving in excess of 50 miles per hour. This Court finds that the Debtor had to have known that he was driving while intoxicated and in excess of the speed limit. The Debtor was familiar with the neighborhood since he grew up there. He knew the speed limit and the fact that pedestrians and bicyclists could be in the area. The Victim was dressed completely in white and was walking at the very edge of the roadway. The car hit the Victim's body and threw a severed leg ninety-one feet. The Victim's torso slid up onto the hood. The Victim's head smashed the windshield and then her torso was thrown 55 feet from the point of impact.

■ This Court finds that the Debtor must have known he hit a person or else he was so drunk that he did not even realize it. Furthermore, this Court finds that driving in such an intoxicated condition and leaving the scene of an accident knowing that an individual has been hit is a malicious and wanton act. This Court finds that the Debtor's voluntary act of consuming alcohol and then driving while legally intoxicated, which forseeably resulted in hitting the Victim, constitutes willful and malicious injury by the Debtor pursuant to 11 U.S.C. § 523(a)(6). This Court, therefore, finds that the Debtor's State Court Judgment, which directly resulted from his hit and run drunk driving acci-

**2.** Although several courts utilizing dicta from *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) have permitted the "reckless disregard" standard involved in negligent conduct to translate into "willful" and "malicious" conduct, the Eleventh Circuit in *Chrysler Credit Corp.* held that the 1978 amendments to the Code overruled the less strict "reckless disregard" standard and that "willful" means intentional or deliberate. *Chrysler Credit Corp.*, 842 F.2d at 1262.

dent with the Victim, is not dischargeable under 11 U.S.C. § 523(a)(6).

## B. *THE DEBTOR'S DEBT IS EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. 523(a)(9)*

Pursuant to 11 U.S.C. § 523(a)(9), a court may except from discharge a debtor's debt incurred as a result of driving while intoxicated. Specifically, 11 U.S.C. § 523(a)(9) states that a discharge does not discharge an individual debtor from any debt "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug or other substance."

The Congressional Record Statements (Pub.L. 101–581, November 15, 1990) provides the legislative intent of the 1990 amendment to 11 U.S.C. § 523(a)(9):

> Drunk driving is a major public health problem, killing and injuring tens of thousands of Americans-particularly young people-every year. A drunk driving victim suffers enough when he or she is injured in an accident or losses [sic] a family member or friend. That victim should not be victimized a second time by the Federal bankruptcy code.
>
>     \*    \*    \*    \*    \*    \*
>
> In addition to closing this loophole to protect the rights of drunk driving victims, the legislation reported by the Judiciary Committee and passed by the Senate accomplished two other objectives. It extended current law so that the law covers drivers impaired by drugs, as well as those impaired by alcohol. It also addressed a problem of judicial procedure referred to as the race to the courthouse.
>
> All three of these original Senate objectives will be accomplished by the legislation now before us. Although the technical bankruptcy mechanism for addressing the race to the courthouse problem has been changed, the intended effect of the original legislation remains unchanged. 130 Cong. Rec. S17654 (daily ed. Oct. 27, 1990) (statement of Sen. Biden).

    \*    \*    \*    \*    \*    \*

S. 1931 builds upon legislation enacted in 1984 that was intended to prevent drunk drivers who killed or injured innocent people from escaping from debts owed to the victims simply by declaring bankruptcy.

    \*    \*    \*    \*    \*    \*

By forcing drunk drivers or drugged drivers to pay their debts, S. 1931 will finally fill the gaps that previously have left victims uncompensated or undercompensated for their injuries. We will be sending a clear message to those drivers intoxicated by using alcohol or drugs that they will now be held financially accountable for their acts. 130 Cong.Rec. S17654 (daily ed. Oct. 27, 1990) (statement of Sen. Thurman).

The original statements of the legislative intent of 11 U.S.C. § 523(a)(9) are found in the Congressional Record Statements:

> Today there exists an unconscionable loophole in the bankruptcy statute which makes it possible for drunk drivers who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment debt discharged in Federal Bankruptcy Court. This loophole affords opportunities for scandalous abuse of judicial processes. 120 Cong.Rec. S1622 (daily ed. Feb. 24, 1983) (statement of Sen. Danforth).
>
> Subtitle D is a modified version of S. 605, a bill I introduced earlier this session ... [which] would have defined drunk driving as a wilful and malicious offense for purposes of the bankruptcy statute. The provision in the bill before us achieves the same result by specifically stating that debts arising from drunk driving shall be nondischargeable. 129 Cong.Rec. S5385 (daily ed. April 27, 1983) (statement of Sen. Danforth).
>
> Also contained in this package is a modified version of a bill introduced by Senator Danforth which provides that a debt incurred as a result of drunk driving is not dischargeable. Under existing law, a debt resulting from a tortious act is nondischargeable only if the debt is the result of a "wilful and malicious injury" to the property or person of another. In most States,

the act of the drunk driver is grounded on negligence and is, thus, dischargeable. By making such debts nondischargeable, we can protect victims of the drunk driver and deter drunk driving. 129 Cong.Rec. S5384 (daily ed. April 27, 1983) (statement of Sen. Helfin).

This amendment [will] prevent the discharge of judgments or claims where the debtor's operation of a motor vehicle while legally intoxicated were to occur. 129 Cong.Rec. S5362 (daily ed. April 27, 1983) (statement of Sen. Heflin).

... this bill provides new protections ... reforms in the law of bankruptcy as it treats claims against drunk drivers, to ensure that victims of the drunk driver do not have their judgments against the drunk driver discharged in bankruptcy. 130 Cong.Rec. S8890 (daily ed. June 29, 1984) (statement of Sen. Dole).

Judgments against drunk drivers for personal injuries ... could be discharged in bankruptcy like any other judgment; now that is prohibited. Just a number of distinct improvements. 130 Cong.Rec. H7492 (daily ed. June 29, 1984) (statement of Rep. Sawyer).

[§ 523(a)(9) ] clarifies present law relating to the nondischargeability of debts incurred by drunk drivers. Debts incurred by persons driving while intoxicated are presumed to be wilfully and maliciously incurred under this provision. 130 Cong. Rec. H7489 (daily ed. June 29, 1984) (statement of Rep. Rodino, Chairman of the House Committee on the Judiciary).

■ It is evident that Congress sought three objectives when it adopted 11 U.S.C. § 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who caused injury by drunk driving did not escape civil liability through bankruptcy laws; and (3) to protect victims of drunk driving. *Stackhouse v. Hudson*, 859 F.2d 1418 (9th Cir.1988). The exemption applies to all sorts of debts. *Lugo v. Paulsen*, 886 F.2d 602 (3rd Cir.1989). Both compensatory and punitive damages are subject to nondischargeability. *Moraes v. Adams*, 761 F.2d 1422 (9th Cir.1985).

The applicable law of Florida addressing the unlawful operation of a motor vehicle while intoxicated is found in § 316.193, Fla. Stat. (1991), which provides in relevant part:

A person is guilty of the offense of driving under the influence and is subject to punishment as provided in

subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:

(a) The person is under the influence of alcoholic beverages ... when affected to the extent that his normal faculties are impaired; or

(b) The person has a blood or breath alcohol level of 0.10 percent or higher.

\* \* \* \* \* \*

(3) Any person:

(a) Who is in violation of subsection (1);

(b) Who operates a vehicle; and

(c) Who, by reason of such operation, causes:

\* \* \* \* \* \*

3. The death of any human being is guilty of DUI manslaughter, a felony of the second degree, punishable as provided in Sec. 775.082, Sec. 775.083, or Sec. 775.084.

\* \* \* \* \* \*

(9) A person who is arrested for a violation of this section may not be released from custody:

(a) Until he is no longer under the influence of alcoholic beverages, any chemical substance set forth in Sec. 877.111, or any substance controlled under chapter 893 and affected to the extent that his normal faculties are impaired;

(b) Until his blood alcohol level is less than 0.05 percent; or

(c) Until 8 hours have elapsed from the time he was arrested.

The applicable law of Florida regarding the presumption of driving while intoxicated is found in § 316.1934(2)(c), Fla.Stat. (1991), which states in pertinent part:

(c) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood or breath, that fact shall be prima facie evidence that the person was under the influence of alcoholic beverages

to the extent that his normal faculties were impaired.

\*     \*     \*     \*     \*     \*

The presumptions provided in the foregoing provisions of this subsection shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.

In *State v. Rolle,* 560 So.2d 1154, 1155 (Fla.1990) the Florida Supreme Court approved an instruction that evidence of .10 percent blood-alcohol content or higher "would be sufficient by itself to establish that the Defendant" was impaired. In *Haas v. State,* 597 So.2d 770 (Fla.1992) the Florida Supreme Court also held that blood-alcohol level of 0.10 or more, standing alone, constitutes circumstantial evidence upon which finder of fact may convict an accused driver of driving under the influence either by impairment or by virtue of blood alcohol level so as to support a manslaughter conviction.

■ In order to establish that the debt is exempt under 11 U.S.C. § 523(a)(9), the Plaintiff need only show that the Debtor was legally intoxicated while driving and that his debt arises from that conduct. A state DWI conviction is not a prerequisite. *Simpson v. Phalen,* 145 B.R. 551 (N.D.Ohio 1992); *Allstate Ins. Co. v. Humphrey,* 102 B.R. 629 (S.D.Ohio 1989). There does not have to be a blood alcohol test done in order to prove intoxication. *Wiggins v. Harper,* 180 B.R. 676 (M.D.Ala.1995). There is also no need for a prepetition final judgment. *Roberts v. Spencer,* 168 B.R. 142 (N.D.Tex.1994). There is also no need to establish that there was a factual finding of legal intoxication in state court action. *Travelers Ins. Co. v. Scholz,* 111 B.R. 651 (N.D.Ohio 1990). Judgments are nondischargeable upon a mere showing that the debtor was driving while intoxicated without showing that the intoxi-

cation was the principal or sole cause of the accident. *State Farm Mut. Auto. Ins. Co. v. Kupinsky,* 133 B.R. 993 (Bankr.S.D.Ill.1991).

Since the enactment of 11 U.S.C. § 523(a)(9), the Bankruptcy Court for the Southern District of Florida has on many occasions clearly applied and interpreted this provision. In *Florica Radivoj v. Anthony Albert Williams (In re Anthony Albert Williams),* 101 B.R. 356, 358 (Bankr.S.D.Fla. 1989) (C.J. Cristol), the Court held that the debtor's state court judgment was nondischargeable under 11 U.S.C. § 523(a)(9). Although no chemical analysis of the debtor's breadth or blood was performed, the *Williams* Court found that the opinion testimony and evidence as to the debtor's intoxication at the bankruptcy trial was sufficient to find that the debtor's faculties were impaired. As such, the *Williams* Court excepted the debtor's debt from discharge pursuant to 11 U.S.C. § 523(a)(9). See also *In re Martin Gomez,* 70 B.R. 96, 97 (Bankr. S.D.Fla.1987); *In re Cynthia Merle Lewis,* 69 B.R. 600, 601 (Bankr.S.D.Fla.1987) (state court judgment nondischargeable under 11 U.S.C. § 523(a)(9) although debtor's intoxication not determined under state law).

■ This Court finds that the Plaintiff has proven by a preponderance of the evidence that the Debtor was driving while intoxicated. Furthermore, even if this Court accepts the Debtor's testimony that he drank some or all of a beer after the accident, the testimony of Dr. Hearn is that the blood alcohol would still be more than .10% at the time of the accident. The Debtor, however, has offered no scientific proof to contradict the retrograde extrapolation testimony of Dr. Hearn.

This Court finds that Dr. Hearn's testimony regarding retrograde extrapolation amply supports a finding that the Debtor was legally intoxicated at the time of the accident. In addition, based on the testimony of the witnesses addressing the Debtor's conduct while in police custody, abnormal driving, and voice during the 911 call, this Court finds that the Debtor was affected by his drinking to such

an extent that his normal faculties were impaired pursuant to § 316.1934(2)(c), Fla.Stat. (1991). Based on the foregoing, this Court finds that the Debtor's State Court Judgment is not a dischargeable debt under 11 U.S.C. § 523(a)(9) of the Code.

This Court will enter a Final Judgment of even date in accordance with these Findings of Facts and Conclusions of Law.

**DONE AND ORDERED.**