**In the Matter of David W. CLEVELAND, Debtor.**

**Annette B. CLEVELAND, Plaintiff,**

**v.**

**David W. CLEVELAND, Defendant.**

Bankruptcy No. N95–10480–WHD.
Adversary No. 95–1022N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

July 16, 1996.

Allen M. Trapp, Jr., Carrollton, Georgia, for Plaintiff.

Daniel M. Barnes, Carrollton, Georgia, for Defendant.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this matter is the "Complaint to Determine Dischargeability of Debt" of Annette B. Cleveland (hereinafter "the Creditor"). This Complaint comes as part of an adversary proceeding, commenced by the Creditor to determine the dischargeability of certain divorce-related debts owed her by David W. Cleveland (hereinafter "the Debtor"), and it consequently gives rise to a core proceeding within the subject matter jurisdiction of the Court. *See* 28 U.S.C. § 157(b)(2)(I). Having conducted an April 25, 1996 hearing on the matter and taken the arguments of counsel under advisement, the Court now renders its decision in accordance with the following reasoning.

1. The Debtor has a monthly take home salary of $1,300.00, while his companion nets $2,002.50 each month after taxes. Against this income, the Debtor alleges that he and his companion must pay the following expenses every month:

| | |
|---|---|
| First Mortgage Payment | $ 861.76 |
| Second Mortgage Payment | $ 197.00 |
| Electricity | $ 300.00 |
| Telephone | $ 30.00 |
| Groceries | $ 400.00 |
| Clothing | $ 100.00 |
| Laundry | $ 50.00 |
| Prescription Drugs | $ 30.00 |
| Gasoline | $ 200.00 |
| Property Taxes | $ 44.00 |
| Credit Card Payments | $ 41.00 |
| First Car Payment | $ 260.00 |
| Second Car Payment | $ 345.22 |
| | $2,858.98 |

### DISCUSSION

Although once united as husband and wife, the Debtor and the Creditor became formally separated as a consequence of a February 1992 decree of divorce granted by the Superior Court of Carroll County. As part of that separation mandate, the Superior Court ordered the Debtor to hold his wife harmless on the obligation now at issue, a Western Savings loan secured by the family's mobile home trailer. Thereafter, the Debtor failed to make payments upon the Western Savings obligation and the lender repossessed the underlying collateral. Additionally, since the repossession had failed to satisfy the full amount of its claim, Western Savings commenced efforts to recover a $17,919.32 deficiency from the Creditor, as a co-obligor on the original note.

In view of the collection efforts still pending against her and the terms of their prior "hold harmless" agreement, the Creditor since has filed the present "Complaint to Determine Dischargeability of Debt," arguing that 11 U.S.C. § 523(a)(15) creates a presumption of nondischargeability regarding the Debtor's divorce-related obligations. While acknowledging an exception to that rule based upon a debtor's inability to pay, the Creditor submits that the Debtor can actually pay the debt at issue, since the income of his current live-in companion provides him with a significant level of disposable income.[1] Likewise, the Creditor argues that any benefit of discharging the debt in question would be outweighed by its inequitable consequences, since she has no ability to satisfy it from her own limited finances.[2]

---

[1] Even assuming the validity of these expenses, the Creditor notes that the combined income of the Debtor and his companion will satisfy all the Debtor's monthly needs and still leave a surplus of almost $450.00 each month.

[2] The Creditor waits tables at a local restaurant and thereby generates between $150.00 and $200.00 of income each week. Like the Debtor, she has moved on to a new relationship of cohabitation. By factoring the creditor's companion's $200.00 weekly take home pay into the equation, the Creditor notes that she and her companion collectively produce approximately $1,700.00 in monthly income. Using those funds, however, the couple must pay $1,757 in fixed expenses each month.

Thus, she contends, the Court should find the divorce's hold harmless obligation to be a nondischargeable debt under the terms of section 523(a)(15).

In response, the Debtor asserts that the "inability to pay" qualification of section 523(a)(15)(A) demands an examination limited to a debtor's own income, with no accounting for the salary of a new spouse or companion. Hence, according to the Debtor, under a proper application of section 523(a)(15)(A), he has no disposable income from which to pay the debt in question. Moreover, since discharging the mobile home debt formed one of his primary motivations for filing bankruptcy to begin with, the Debtor argues that granting a discharge of that debt would result in a benefit that outweighs the detrimental consequences to his former spouse.

### I

Through the Bankruptcy Reform Act of 1994, Congress augmented the dischargeability scheme governing divorce-related obligations by creating an entirely new section. *See* P.L. 103–394 (enacted on October 22, 1994), at § 304, 108 Stat. 4150 (codified as 11 U.S.C. § 523(a)(15)). In pertinent part, this newly adopted provision states as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(15) not of the kind described in paragraph (5)[3] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor

\* \* \* \* \* \*

11 U.S.C. § 523(a)(15) (1994). Generally speaking, this section has one effect—to make all divorce-related obligations subject to a presumption of nondischargeability. *See Chalkley v. Carroll (In re Chalkley)*, 1995 WL 242314, No. 93–17198 at *1 n. 1 (9th Cir. April 25, 1995). A creditor bears the initial burden of establishing that the debt owed to it actually arose in connection with a divorce or separation agreement. *See In re Taylor*, 191 B.R. 760, 764 (Bankr.N.D.Ill.1996). From and after that point, however, the bur-

---

**3.** Regarding the general dischargeability of such divorce-related obligations, paragraph (5) of section 523(a) makes the following provision:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement

\* \* \* \* \* \*

11 U.S.C. § 523(a)(5). Thus, as a precursor to any section 523(a)(15) analysis, the Court nor-

mally must determine whether the debt in question qualifies as alimony or support, since debts carrying such a support-like character are deemed conclusively and irrefutably nondischargeable by the terms of section 523(a)(5). *Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 372 n. 1 (Bankr.N.D.Ga.1996) (Drake, B.J.) (examining the interplay between the two sections). In the instant case, however, the Creditor has conceded that the debt owed to her will not qualify for nondischargeability under section 523(a)(5). Thus, the Court need only focus its attention upon the applicability and impact of section 523(a)(15).

den of coming forth shifts to the debtor, thereby requiring him to demonstrate either (1) that he lacks the ability to pay the debt in question from income and property not necessary for the support of himself and his dependents, or (2) that the allowance of a discharge would produce benefits exceeding any consequent harm to the Creditor. *In re Gantz,* 192 B.R. 932, 935 (Bankr.N.D.Ill. 1996); *Florio v. Florio (In re Florio),* 187 B.R. 654, 657 (Bankr.W.D.Mo.1995); *Hill v. Hill (In re Hill),* 184 B.R. 750, 753–54 (Bankr.N.D.Ill.1995); *In re Silvers,* 187 B.R. 648, 649 (Bankr.W.D.Mo.1995) (burden of going forward, not burden of proof, shifts to the debtor); *Phillips v. Phillips (In re Phillips),* 187 B.R. 363, 368–69 (Bankr.M.D.Fla.1995); *Carroll v. Carroll (In re Carroll),* 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995).

 As the Court previously has noted, in surmounting his burden under section 523(a)(15)(A), a debtor may not simply rely upon a "snapshot" of his financial abilities at the time of filing. *See Humiston v. Huddelston (In re Huddelston),* 194 B.R. 681, 687–88 (Bankr.N.D.Ga.1996) (Drake, B.J.). Rather, in keeping with that provision's statutory mission, parties seeking exception under section 523(a)(15)'s "ability to pay" language must do so by reference to the totality of their financial circumstances. *See id.; see also McGinnis v. McGinnis (In re McGinnis),* 194 B.R. 917, 920 (Bankr.N.D.Ala.1996); *In re Smither,* 194 B.R. 102, 107 (Bankr. W.D.Ky.1996) (rather than snapshot, court must consider prospective earning capacity). Section 523(a)(15)(A) calls for an expanded scope of inquiry and, as such, courts must

give attention to a panoply of relevant considerations, including:

(1) the debtor's "disposable income" as measured at the time of trial; [4]

(2) the presence of more lucrative employment opportunities which might enable the debtor fully to satisfy his divorce-related obligations;

(3) the extent to which the debtor's burden of debt will be lessened in the near term; and

(4) the extent to which the debtor previously has made a good faith effort to fully employ towards satisfying the debt in question.

*Huddelston,* 194 B.R. at 688. Notwithstanding the results of any closely tailored financial snapshot, if surveying these broader considerations reveals an actual ability to perform, the debtor cannot avail himself of section 523(a)(15)(A)'s safe harbor. *See id.; see also Straub v. Straub (In re Straub),* 192 B.R. 522, 528–29 (Bankr.D.N.D.1996); *Florio v. Florio (In re Florio),* 187 B.R. 654, 657 (Bankr.W.D.Mo.1995).

 Likewise, when supplemental income from a new spouse or live-in companion serves to alter the debtor's financial prospects, the Court must factor that consideration into its evaluation of his "ability to pay." As noted earlier, section 523(a)(15)(A) rescues from nondischargeability only those obligations that the debtor cannot satisfy "from income or property of the debtor not reasonably necessary to be expended for the maintenance or support." 11 U.S.C.

---

4. By looking first to the Debtor's disposable income, this standard recognizes the strong resemblance between section 523(a)(15) and Code section 1325(b). *In re Phillips,* 187 B.R. at 368–69; *In re Carroll,* 187 B.R. at 200; *In re Hill,* 184 B.R. at 755. In pertinent part, section 1325(b) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the [Chapter 13] plan, then the court may not approve the plan unless, as of the effective date of the plan—

\* \* \* \* \* \*

(B) the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the

plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b). Thus, similar to its nondischargeability counterpart, an application of section 1325(b) turns on a measurement of the debtor's anticipated "disposable income." *See e.g., Anderson v. Satterlee (In re Anderson),* 21 F.3d 355, 357–58 (9th Cir.1994).

§ 523(a)(15)(A). Inclusion of a "reasonably necessary" qualifier to this provision necessarily gives rise to a two-part inquiry: (1) a primary examination of the debtor's income-producing abilities; and (2) a secondary inspection of the extent to which that generated income is necessary for the support of the debtor and his dependents. Absent consideration of a new spouse's income and its debt-absorbing impact upon the family's finances, no certainty may be had in the second line of inquiry, i.e., the Court cannot determine exactly what quantum of the debtor's own income truly is "necessary" for the support of himself and his dependents.[5] Consequently, when applying the "ability to pay" standard of section 523(a)(15)(A), a court must consider the income of a new spouse or spousal equivalent in order to reach a complete satisfaction of the task before it. *In re Smither*, 194 B.R. at 102 ("where a debtor has remarried prior to the trial of the 11 U.S.C. § 523(a)(15) action, his or her spouse's income should be included in the calculation of the debtor's disposable in-

come"); *In re Comisky*, 183 B.R. 883, 883–84 (Bankr.N.D.Cal.1995) (incorporating the new spouse's income in its analysis); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 755 (Bankr. N.D.Ill.1995) (discussing the impact of a new spouse's income upon that debtor's "ability to pay").[6]

■ That said, the Court finds it clear that the income of the Debtor's companion must be factored into the present equation and that, under such a corrected analysis, the Debtor has the ability to pay the debt at issue from income or property not reasonably necessary for the maintenance or support of himself or a dependent. The Debtor and his companion claim living expenses totalling approximately $2,858.94 each month, a figure well in excess of the Debtor's $1,300.00 average monthly net income. Nevertheless, factoring the companion's $2,002.50 take home pay into the equation serves to change this bottom line dramatically, leaving the Debtor with a significant residue of monthly income not necessary for the support of himself or a

---

5. For example, a debtor having debts equal to or in excess of his own monthly income might choose to wed again and, in doing so, have the good fortune of marrying an individual of greater wealth who pays all his bills for him. Under the interpretation of section 523(a)(15)(A) advanced by the Debtor, that individual would be entitled to discharge all non-support obligations from a prior divorce, since the Court would confine its inquiry to a comparison of the debts listed under the party's name and the amount of his personal income. Clearly, however, such a result would offend equity, for in reality all income generated by this hypothetical debtor would constitute discretionary or disposable funds and thus be suitable for application to his divorce-related obligations.

More importantly, however, a finding of dischargeability in this scenario would contradict the written directive of section 523(a)(15), to the extent that all income produced by the debtor would not be "necessary for support" as proscribed by that section's terms. If a significant portion of a debtor's income actually is made "unnecessary for support" by another party's contribution, the plain terms of section 523(a)(15)(A) direct that he not be able to shield that income from his ex-spouse. *See* 11 U.S.C. § 523(a)(15)(A) (allowing discharge if the debtor cannot pay the obligation "from funds not reasonably necessary" for support); *see also United States Nat'l Bank of Ore. v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 462, 113 S.Ct. 2173, 2185–2186, 124 L.Ed.2d 402 (1993);

*Hallstrom v. Tillamook County*, 493 U.S. 20, 28, 110 S.Ct. 304, 309–310, 107 L.Ed.2d 237 (1989) (courts must give effect to a statute's plain meaning unless such a reading produces results demonstrably at odds with legislative intent); *see also United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 504 n. 6, 113 S.Ct. 2202, 2210 n. 6, 124 L.Ed.2d 449 (1993); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 35–36, 112 S.Ct. 1011, 1015–1016, 117 L.Ed.2d 181 (1992) (courts must construe statutory provisions in a fashion that gives operative effect to each term or phrase). Thus, as a consequence of the Code's unequivocal reference to "necessity," the Court finds that it must include such external sources of support as part of its analysis in order to determine the applicability of section 523(a)(15)(A)'s exception.

6. As previously noted, section 523(a)(15)'s "ability to pay" standard closely resembles the "disposable income" standard from section 1325(b), and its mechanics consequently should track the accepted parameters of that section. *See* supra, note 2. The parallel nature of the two standards provides still further support for the inclusion of a new spouse's income under section 523(a)(15)(A), since such an expanded view of disposable income has become a matter of accepted practice under section 1325(b). *See In re Smither*, 194 B.R. at 108 (citing *Matter of Belt*, 106 B.R. 553 (Bankr.N.D.Ind.1989); *In re Strong*, 84 B.R. 541 (Bankr.N.D.Ind.1988); *In re Kern*, 40 B.R. 26 (Bankr.S.D.N.Y.1984)).

dependent.[7] In view of this surplus, the Court finds that the Debtor does have the ability to pay the debt in question by making installment payments of $300–400.00 per month. Consequently, the Debtor fails to qualify for discharge under the first prong of section 523(a)(15).

## II.

◼ Even though a debtor has the ability to pay the debt in question, he still may receive a discharge if doing so "would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor." *See* 11 U.S.C. § 523(a)(15)(B). Through this alternate provision, debtors who fail in contesting their ability to pay under section 523(a)(15) may proceed to question the relative ability of their spouses to absorb a determination of nondischargeability. *See Florio*, 187 B.R. at 658; *Carroll*, 187 B.R. at 201. Thus, "if a non-debtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the non-debtor spouse or because the non-debtor spouse could easily pay it) the obligation would be discharged," even though the debtor himself might have the ability to pay the obligation. H.R.Rep. No. 835, 103d Cong., 2d Sess. 54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3363.

◼ Given the nature of its inquiry, courts hinge the applicability of section 523(a)(15)(B) upon a variety of factors. Specifically, the income and expenses of each party, the nature of the debt in question, and the former spouse's ability to pay all are said to influence the dischargeability of a divorce-related debt under section 523(a)(15)(B). *In re Hill*, 184 B.R. at 755; *In re Carroll*, 187 B.R. at 201; *In re Florio*, 187 B.R. at 658. Such considerations merely present a starting point of inquiry, however, and courts also must give weight to the intangible effect which its finding will have upon each party involved. *In re Huddelston*, 194 B.R. at 689; *In re Taylor*, 191 B.R. at 767 ("result could change in other cases if the evidence showed some horrible non-economic detriment (to health, liberty, or something else of great material value to the non-debtor party)"). Ultimately, therefore, whenever the totality of the circumstances and the equities of the case call for such a result, the Court should declare the debt to be dischargeable, either in whole or in part.[8]

◼ Applying this section 523(a)(15)(B) framework to the case before it, the Court finds it clear that discharging the aforementioned debt would result in a benefit that pales in comparison to the detrimental consequences brought upon the Debtor's former spouse. As previously noted, the Debtor has moved on to a new relationship, and income pooling thereunder provides him with significant disposable income after the payment of all expenses. Consequently, discharging the Debtor's divorce-related obligation would save his surplus funds for use in pursuing recreational and discretionary activities, but it would accomplish little else of any benefit.

By the same token, the detriment brought upon the Debtor's ex-wife by such a discharge makes preserving the Debtor's discretionary income an unjustifiable end. As previously noted, the Creditor's employment as a waitress provides her with $150–200.00 in weekly income. While the Creditor also has moved on to a new relationship of cohabi-

---

7. In the immediate term, the Debtor has a surplus of nearly $450.00 each month. Additionally, the amount of the Debtor's disposable income is due to increase, in that he will pay off his automobile loan completely upon making two more monthly payments. Once that loan has been satisfied, the Debtor actually will have over $700.00 in discretionary income each month.

8. In yet another area of controversy surrounding section 523(a)(15), courts have divided on whether the section mandates an all or nothing determination of dischargeability. *Compare Comisky v. Comisky (In re Comisky)*, 183 B.R. 883, 884 (Bankr.N.D.Cal.1995) (court may issue an order of partial dischargeability when the facts so warrant), *with In re Taylor*, 191 B.R. at 767; *In re Silvers*, 187 B.R. at 649 (debt must be found either nondischargeable or dischargeable in its entirety). Given its conclusion that the debt before it would be completely nondischargeable under either approach, the Court need not address whether section 523(a)(15) permits the entry of such a partial discharge under the facts of this particular case.

tation, adding her companion's $200.00 per week income merely provides the couple with approximately $1,700.00 in monthly income. Using those funds, the Creditor and her companion must pay $1,757 in fixed expenses each month to support their fairly spartan lifestyle. Indeed, as the Creditor herself pointed out at trial, were the Court to discharge the Debtor from his divorce-related obligation, the Creditor most likely would be forced into bankruptcy.

Given the presence of such detrimental consequences and the lack of any offsetting benefits from dischargeability, the Court finds the Debtor to have failed in justifying his obligation's discharge under section 523(a)(15)(B), just as he has faltered in showing his inability to pay under section 523(a)(15)(A). Therefore, since he cannot overcome the hurdle posed by either prong to section 523(a)(15), the Debtor holds no entitlement to a discharge pursuant to that provision. As such, the Creditor's complaint to determine nondischargeability shall be granted.

#### CONCLUSION

The Court having conducted a hearing on the "Complaint to Determine Dischargeability of Debt" of Annette B. Cleveland and having given the matters involved therein its careful consideration, it is **ORDERED** that the hold harmless obligation owed to that creditor by David W. Cleveland is **NONDISCHARGEABLE** in bankruptcy pursuant to 11 U.S.C. § 523(a)(15).

**IT IS SO ORDERED.**

#### *JUDGMENT*

Judgment is hereby entered for the Plaintiff against the Defendant in the above-styled adversary proceeding in accordance with the Order of the Court entered the 16th day of July, 1996.