**In re Brian Dale WINDOM, Michelle Dawn Windom a/k/a Michelle Marshall**

**Carol (Windom) CROSSETT, Plaintiff,**

v.

**Brian Dale WINDOM, Defendant.**

**Bankruptcy No. 95–13204.
Adv. No. 96–5073.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

April 21, 1997.

Laura Keeton, Huntingdon, TN, for Plaintiff.

Richard H. Walker, Lexington, TN, for Debtor.

Ted M. Hunderup, Humboldt, TN, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

G. HARVEY BOSWELL, Bankruptcy Judge.

The plaintiff, Carol Crossett, filed this complaint seeking to except from discharge

debts owed by the debtor, Brian Dale Windom. The plaintiff contends that the debt arose in connection with her divorce from the debtor/defendant and, thus, is nondischargeable pursuant to 11 U.S.C. § 523(a)(15). The court conducted a trial in this matter on March 17, 1997. FED.R.BANKR.P. 7001 et seq. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). The following shall serve as this court's findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052.

## I. Findings of Fact

Chancellor Walton West of the Carroll County Chancery Court awarded to the plaintiff an absolute divorce from the defendant/debtor on March 22, 1994. The Final Decree incorporated a Marital Dissolution Agreement (hereinafter "MDA") dated January 12, 1994, which was based on the agreements of the parties. Exhibit 1. The MDA called for the plaintiff to give up her interest in their jointly owned real property and mobile home.[1] In exchange, the plaintiff was to receive one half (½) of the proceeds if the property was sold, or, if the debtor remarried and lived on the land, the plaintiff was entitled to one half (½) of the value of the land and home or $13,800, whichever was greater.[2] The MDA held the debtor responsible for mortgage payments on the mobile home, debt owed on the land, and one half (½) of the credit card bills dated prior to October 1993. According to the plaintiff, the debtor was also required to take the necessary steps to remove the plaintiff's name from those credit cards still held by the debtor. While this court cannot find the specific language in the MDA which requires the debtor to take such action, the debtor did not dispute that he was to have taken such action.

As of October 10, 1994, the debtor's Discover Card had a balance of $51.21. From December 1994 through March 1995, the debtor charged on his Discover Card, among other items, approximately $4,059.00 at Double J Western Store. Exhibit 10. Among the items charged were a horse, three saddles, and three or four bridles. Except for two payments totaling $171.00, the debtor made no payments toward this debt. Subsequently, Discover notified the plaintiff of the balance due on the credit card. It was at this time that the plaintiff became aware that the debtor had not taken her name off his credit cards.[3] To avoid litigation, the plaintiff paid $342.00 on the Discover balance.

The debtor remarried on August 13, 1995. It appears that he did not notify the plaintiff of his remarriage or make any contact for the purpose of satisfying the requirements of the MDA. When the plaintiff learned of the debtor's remarriage, she filed a Petition for Contempt on September 14, 1995. Personal service was obtained on October 13, 1995, and on October 24, 1995, the debtor appeared in Court and requested a continuance, which the court granted.

Also on October 24, 1995, the debtor and his new wife conveyed approximately 63 acres of the real property by signing a warranty deed. The debtor retained approximately 0.99 acres and the mobile home. Exhibit 6. The debtor sold the 63 acres for $34,000; however, the debtor testified that he did not receive any of the proceeds because he owed the Bank at least $34,000. The debtor did not notify the plaintiff of the sale, and he made no attempt to pay her any of the amounts due under the MDA.

The Chancery Court heard the Contempt Petition on November 28, 1995, and entered a judgment in favor of the plaintiff, awarding her $17,000 (½ the value of the real property) as well as $324.00 and $148.00 for payments the plaintiff made to Discover Card and to Bank of America on behalf of the debtor. The court further ordered the debtor to take all necessary steps to remove the plaintiff's name on all credit card accounts which the

---

1. The plaintiff executed a quitclaim deed in favor of the debtor.

2. The MDA is silent as to any mortgage or other liens that may be outstanding on the property at the time of a sale or upon the remarriage of Mr. Windom.

3. The debtor testified that he attempted to have the plaintiff's name removed from the credit cards. The companies told the debtor he could not take such action over the telephone. On the debtor's subsequent try to remove the plaintiff's name from the accounts, the companies told him that her name could not be removed because there were too many charges.

debtor held and to hold the plaintiff harmless from any liability on such credit card accounts. Exhibit 7.[4]

The debtor filed a Chapter 13 bankruptcy petition on December 19, 1995. On January 18, 1996, he converted his case to Chapter 7. He subsequently abandoned the mobile home and the remaining land that he owned to Citizens Bank and the Bank of Huntingdon. The debtor did not list in Schedule B of his petition the horse, three saddles, and three or four bridles that he purchased with his Discover Card.[5] The plaintiff, through her attorney, filed a complaint to determine dischargeability of the debt that was owed to her under the MDA.

The plaintiff testified that she and her husband earn in net income $2,750 each month from their jobs. Their monthly expenses include a mortgage payment of $440, a $185 truck payment, credit card debts, and $100 per month for hospital bills. The debtor testified that he earns approximately $300 to $450 per week, depending on the weather and road conditions, as an over the road truck driver. He testified that his wife does not work as she rides with the debtor when he works. The debtor testified that his wife is not disabled in any way and that she has the ability to obtain her license to drive trucks as well. The debtor further testified that his monthly expenses include $200 for rent and approximately $45 for electricity; however, the debtor stated, without offering any additional evidence, that after paying their monthly expenses he and his wife have very little money left at the end of each month.

## II. Conclusions of Law [6]

### 11 U.S.C. § 523(a)(15)

■ Subsection (a)(15) excepts from discharge any debt:

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Section 523(a)(15) has the effect of making all divorce-related obligations subject to a presumption of nondischargeability. *Cleveland v. Cleveland (In re Cleveland),* 198 B.R. 394, 397 (Bankr. N.D.Ga.1996); *Schmitt v. Eubanks (In re Schmitt),* 197 B.R. 312, 315 (Bankr.W.D.Ark. 1996). This court has exclusive jurisdiction to determine if the debt in question is nondischargeable. 11 U.S.C. § 523(c)(1); *see In re Smither,* 194 B.R. 102, 106 (Bankr.W.D.Ky. 1996) (noting that § 523(c)(1) grants federal courts exclusive jurisdiction over § 523(a)(15) matters while granting concurrent jurisdiction with state courts over § 523(a)(5) matters).

### A. Burden of Proof

■ Before the court can review the evidence presented at the trial, the court must first determine on whom the burden of proof rests. Since Congress amended § 523 and added subsection (a)(15), several courts have

---

**4.** The order on the judgment was filed on December 27, 1995, after the debtor filed his voluntary petition for relief under chapter 13. Chancellor West, however, signed the order on December 21, 1995, nunc pro tunc. As a result, the entry of this judgment did not violate the automatic stay that went into effect when the debtor filed his bankruptcy petition on December 18, 1995.

**5.** His testimony at the trial was the first time this court was aware of these assets.

**6.** At the final pre-trial conference, conducted by the court prior to the trial, the parties agreed that § 523(a)(15) was not at issue in this trial as the MDA specifically states that neither party is to receive any alimony. *See* Exhibit 1.

grappled with the issue of burden of proof. Some courts have strictly followed *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), which held that in an action brought under § 523(a) the burden of proof lies with the plaintiff to prove all of the elements of his or her case by a preponderance of the evidence. *See Greenwalt v. Greenwalt (In re Greenwalt),* 200 B.R. 909 (Bankr.W.D.Wash.1996) (finding that in a § 523(a)(15) proceeding the plaintiff has the motivation and ability to demonstrate that the debtor has the ability to pay the obligation in question and to prove that the detrimental consequences of discharge outweigh the benefits the debtor would otherwise gain); *In re Dressler,* 194 B.R. 290 (Bankr.D.R.I.1996) (finding that shifting the burden to the defendant debtor is unnecessary to carry out § 523(a)(15)'s purpose); *In re Butler,* 186 B.R. 371 (Bankr.D.Vt.1995).

■ The majority of courts, however, has ruled that the plaintiff creditor *only* has the burden of proving that (a) the debt is not a debt which is nondischargeable under § 523(a)(5), and (b) the debt was incurred "in the course of divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with state or territorial law by a governmental unit ..." in order for it to be nondischargeable under § 523(a)(15). *See In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky. 1996). If the plaintiff meets this burden of proof, then the burden shifts to the debtor who must either prove an inability to pay the debt under § 523(a)(15)(A) or that a discharge of the debt would result in a benefit to the debtor that outweighs the detrimental consequences of a discharge to the spouse, former spouse, or children of the debtor under § 523(a)(15)(B) regarding the consequences of the discharge on the respective parties.

### B. Ability to Pay

■ The court will measure the debtor's ability to pay as of the date of the trial. In making this determination, the court will not focus on a single moment in time or mere "snapshot" of the debtor's financial strength. Rather the court will look to the totality of the circumstances, including the debtor's future earning potential, as well as his or her income as of the date of the trial. *Smither,* 194 B.R. at 107; *Dressler,* 194 B.R. at 300; *Belcher v. Owens (In re Owens),* 191 B.R. 669, 674 (Bankr.E.D.Ky.1996).

■ To determine the amount of income that a debtor earns for purposes of § 523(a)(15), several courts have used the "disposable income" test. *Greenwalt,* 200 B.R. at 913; *Smither,* 194 B.R. at 108; *Dressler,* 194 B.R. at 304; *Slover v. Slover (In re Slover),* 191 B.R. 886, 892 (Bankr.E.D.Okla. 1996); *Owens,* 191 B.R. at 674. Some courts have used the "undue hardship" test found in § 523(a)(8). *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995); *In re Straub,* 192 B.R. 522 (Bankr.D.N.D.1996). However, the language of subsection (a)(15) is almost identical to the language found in § 1325(b)(2); therefore, this court finds the "disposable income" test to be the appropriate standard by which to determine the debtor's ability to pay.

■ Several courts have enumerated several factors for this court to consider regarding the debtor's ability to pay:

1. The debtor's "disposable income" as measured at the time of trial;

2. The presence of more lucrative employment opportunities which might enable the debtor fully to satisfy his divorce-related obligation;

3. The extent to which the debtor's burden of debt will be lessened in the near term;

4. The extent to which the debtor previously has made a good faith effort toward satisfying the debt in question;

5. The amount of the debts which a creditor is seeking to have held nondischargeable and the repayment terms and condition of those debts;

6. The value and nature of any property the debtor retained after his bankruptcy filing;

7. The amount of reasonable and necessary expenses which the debtor must incur for the support of the debtor, the

debtor's dependents and the continuation, preservation and operation of the debtor's business, if any;

8. The income of debtor's new spouse as such income should be included in the calculation of the debtor's disposable income;

9. Any evidence of probable changes in the debtor's expenses.

*Smither,* 194 B.R. at 108–09; *Cleveland,* 198 B.R. at 398. A debtor has the ability to pay an obligation, for purposes of § 523(a)(15)(A), if the debtor has sufficient disposable income to pay all or a material part [7] of a debt within a reasonable amount of time.

■ In the instant case, the court concludes that the debtor has the ability to pay the debt in question owed to the plaintiff. The court first notes that the debtor's burden of debt will be lessened substantially in the near term. A review of the debtor's schedules indicates that the debtor will have discharged approximately $35,000 in debts, notwithstanding the $17,472 in question in this proceeding.

Second, the court is not satisfied that the debtor made a good-faith effort toward satisfying the debt in question. In fact, the evidence before the court is that the debtor failed to take any action toward meeting the requirements of the MDA, which requires the debtor to pay the plaintiff one-half of the value of the real estate in the event the debtor remarries and lives on the property. Further, the court finds disturbing the fact that the debtor appeared in Chancery Court, asked for and received a continuance, and then signed a warranty deed to sell the property in question the same day without informing the plaintiff of his intent to sell the property.

Third, the debtor testified that he earns approximately $1,290 to $1,935 per month,[8] or an average of $1,625 per month. The

record is not clear as to whether this represents the debtor's gross or net income. Giving the debtor the benefit of the doubt, the court will assume this amount is the debtor's gross income. Further, the court will assume that 20% of the debtor's income goes to pay social security, Medicaid, and federal income taxes. Thus, according to the court's calculations, the debtor brings home on the average $1,300 per month. The debtor failed to prove to the court that his income is insufficient for him to pay his monthly expenses as well as the debt owed to the plaintiff. According to the debtor's testimony, he owes approximately $200 per month for rent and pays about $45 per month for electricity. This is the only testimony before this court in the matter. However, the court, on its own initiative, reviewed the debtor's Schedule J from his petition for relief under chapter 7. The debtor lists in Schedule J monthly expenses of $1,133 per month. Thus, based on the sole income of the debtor, he has $167 of disposable income per month.

Additionally, the debtor's new wife is able to work. The fact that she chooses not to work cannot, by itself, defeat the plaintiff's right to recover based solely on the debtor's inability to pay. The court concludes that the debtor's wife has the ability to work and can begin working at any time. Further, the debtor testified that his wife plans to obtain her specialized license so that she and the debtor can team drive. The court, therefore, must consider the additional income the debtor will receive as a result of his wife's working. Such income will only add to the debtor's disposable income. As a result, the court concludes that the debtor has the ability to pay the debt to the plaintiff over a period of time.

### C. Balancing Hardships

■ Even though the debtor in this case has the ability to pay the debt in question,

---

7. The *Smither* court held that a court may grant a partial discharge of § 523(a)(15) debts. In so holding, the court followed the student loan discharge analysis. 194 B.R. at 109. The *Cleveland* court also indicated that it would likely allow partial discharges; however, the court found that it did not need to decide that issue. 198 B.R. at 400 n. 8. Likewise, this court does not need to decide this issue in the instant case.

8. The debtor testified that he earns anywhere from $300 to $450 per week. To make the analysis more clear, the court is using monthly income. Therefore, the court multiplied the debtor's weekly range in pay by 4.3, the average number of weeks in each month.

the debtor may still obtain a discharge if he can prove by a preponderance of the evidence that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse or child of the debtor...." 11 U.S.C. § 523(a)(15)(B). The court must compare the evidence of the debtor's standard of living as opposed to the plaintiff's standard of living to balance the equities in this case. If the debtor's standard of living will be greater than or approximately equal to the plaintiff's standard of living if the debt is not discharged, then the debt should be considered nondischargeable. If, however, the debtor's standard of living will fall materially below that of the plaintiff's if the debt is not discharged, then the debt should be discharged. In other words, if the court finds that the debtor will "suffer more" by not receiving a discharge than the plaintiff would suffer if the debt were discharged, then the court will discharge the debt. *See Smither*, 194 B.R. at 110–11.

█ To properly balance the equities, the court should consider, at a minimum, the following factors:

1.  The amount of debt involved, including all payment terms;

2.  The current income of the debtor, objecting creditor and their respective spouses;

3.  The current expenses of the debtor, objecting creditor and their respective spouses;

4.  The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5.  The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debt, objecting creditor and their respective spouses;

6.  The health, job skills, training, age, and education of the debtor, objecting creditor and their respective spouses;

7.  The dependents of the debtor, objecting creditor and their respective spouses;

8.  Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;

9.  The amount of debt which has been or will be discharged in the debtor's bankruptcy;

10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the § 523(a)(15) issues.

*Smither*, 194 B.R. at 111.

█ The court concludes that the debtor failed to meet his burden of establishing that the benefit of a discharge to him outweighs the detriment to the plaintiff, and therefore the court holds that the debt in question is nondischargeable. First, the court considers the amount of the debt involved, $17,000. After basic computations, the court finds that the debtor, without additional income from his wife, has the disposable income to pay the debt over a period of years. Once the debtor's wife begins earning an income, the debtor's disposable income will increase significantly, thus allowing the debtor to pay this debt in substantially less time.

Next, the court considers the income of the plaintiff and the debtor. The plaintiff testified that she and her spouse net approximately $2,750 per month and that her monthly expenses include $440 for her mortgage, $185 for an automobile payment, and $100 for hospital bills. She also testified that she has a $173 balance on her J.C. Penney card as well as a $700 balance on her Sears card. The plaintiff testified that she and her spouse have approximately $2,000 to pay all other normal living expenses such as utilities, telephone, food, etc. The debtor testified that his net income averages approximately $1,300 per month. As the court discussed earlier, the debtor failed to establish any expenses besides a $200 rent payment and approximately $45 for electricity.[9] The analysis cannot stop here, however. This court must also consider the fact that the debtor's wife will begin team driving with the debtor

---

9.  In Schedule J of his chapter 7 petition, the debtor lists his monthly expenses as $1,133.

in the near future. Thus, the court will not look at the debtor's financial situation without considering the fact that his financial situation will change drastically in the near future. Further, the court notes that the debtor has no other outstanding credit card balances as such debts have been discharged. Thus, after reviewing the totality of the circumstances in this case, the court holds that the debtor failed to meet his burden under § 523(a)(15) by proving that the benefit of obtaining a discharge of this debt to the debtor outweighs the detrimental consequences to the plaintiff. As a result, the court holds that the debt of $17,472 owed by the debtor to the plaintiff is nondischargeable.

Finally, the court considers the debtor's argument that he did not understand the impact of the MDA as he was not represented by counsel during the divorce proceedings. The MDA, however, states in paragraph 19:

    19. *REPRESENTATIONS.* Each party acknowledges that this agreement has been entered into of his or her own free volition with full knowledge and information including tax consequences. In some instances, it represented a compromise of disputed issues. Each believes the terms and conditions to be fair and reasonable under the circumstances. No coercion or undue influence has been used by or against either party in making this agreement. Each party acknowledges that no representations of any kind has been made to him or her as an inducement to enter into this agreement other than the representations set forth herein.

Based on the foregoing language found within the MDA, which the debtor signed, the court finds the debtor's argument that he was not aware of the impact of the MDA to be without merit.

### III. Order

It is therefore **ORDERED** that, pursuant to 11 U.S.C. § 523(a)(15), the debt of $17,472 incurred by the debtor in connection with a divorce proceeding owed by the debtor pursuant to the MDA is nondischargeable. Plaintiff is awarded a nondischargeable judgment for this amount.

**IT IS SO ORDERED.**