In re Robert D. **ARNOTT** and Cynthia M. Arnott, Debtors.

Gary M. **SMOLINSKI**, Plaintiff,

v.

Cynthia M. **ARNOTT**, Defendant.

Bankruptcy No. 96–21164–BKC–PGH.

Adv. No. 96–0842–BKC–PGH–A.

United States Bankruptcy Court, S.D. Florida.

June 17, 1997.

---

Chad P. Pugatch, Ft. Lauderdale, FL.

Harry Ross, Boca Raton, FL.

Marika Tolz, Hollywood, FL, trustee.

### FINDINGS OF FACT AND
### CONCLUSIONS OF
### LAW

PAUL G. HYMAN, Bankruptcy Judge.

**THIS MATTER** came before the Court upon the Complaint of the Plaintiff, Gary M. Smolinski, objecting to dischargeability of certain debts of the Debtor, Cynthia M. Arnott, pursuant to 11 U.S.C. § 523(a)(2)(A), (5), (6) and (15). The Court, having heard the testimony and observed the demeanor of the witnesses, observed and examined the evidence presented, having heard arguments of counsel, and being otherwise fully advised in the premises, hereby enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

This is an action objecting to the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(5), (a)(6) and (a)(15). The Debtor is the former spouse of Gary M. Smolinski, the Plaintiff herein. On or about September 20, 1991, Mr. Smolinski and the Debtor entered into a Marital Settlement Agreement (the "Agreement") for the purpose of resolving and settling their respective property rights, financial matters, support, and alimony obligations resulting from the termination of their marriage.

On March 15, 1996, the Debtor and her new husband filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On July 25, 1996, Mr. Smolinski filed a Complaint objecting to the discharge of certain debts of the Debtor related to insurance benefits and credit cards. The trial was held on March 26, 1997.

### THE INSURANCE BENEFITS

The Agreement provided that the debtor "shall maintain health and accident coverage for the husband provided through her American Express Credit Card/Membership; however, the husband will be responsible for charges directly attributable to his coverage." At trial, the unrebutted evidence presented by Mr. Smolinski showed that after executing the Agreement, and without his knowledge or consent, the Debtor canceled Mr. Smolinski's insurance coverage under the American Express Credit Card/Membership in September of 1992. Nevertheless, the Debtor continued to submit requests for payment on the coverage to Mr. Smolinski. Mr. Smolinski duly paid the requests either to the Debtor or to American Express. This coverage included three separate insurance policies. The payments continued until August of 1994, at which time Mr. Smolinski learned that the Debtor had canceled the insurance policies. The premiums paid by Mr. Smolinski subsequent to the Debtor's termination of the insurance policies totaled $2,271.31.

The evidence further showed that in September of 1994, after Mr. Smolinski learned that the insurance policies had been canceled, various attempts were made to reinstate insurance policy # APG1133014 and transfer the insurance policy to Mr. Smolinski's own name. While insurance policy # APG1133014 was reinstated, it did not contain the same disability benefits. Thus, the Debtor's actions in canceling the policies caused the loss of those disability benefits because they were no longer available by the time the insurance policy was reinstated and transferred to Mr. Smolinski's name. The other two insurance policies could not be

reinstated because too long a period had passed since their cancellation by the Debtor. As a result, the Mr. Smolinski completely lost the benefit of these two insurance policies.

The evidence showed that the actions of the Debtor deprived Mr. Smolinski of benefits of approximately $1,350 in hospital indemnity benefits for an accident on July 15, 1995. In addition, Mr. Smolinski has been deprived of $2,000 per month of disability income benefits from July 15, 1995, to the present. The evidence showed that Mr. Smolinski would have received at least $39,350 in total benefits to date had the Debtor not canceled his coverage.

At trial, the Debtor argued that the insurance company had instructed her to cancel the subject insurance policies due to her remarriage. However, no competent evidence was presented to substantiate this claim. Furthermore, at least one of the insurance policies clearly provided for continuation of coverage for a covered former spouse even upon remarriage. Page 5 of that insurance policy contains the following paragraph:

> Continuation of Insurance: Even though the Cardmember's marriage may have ended, the covered spouse's insurance under this certificate will continue until we receive your request to discontinue it or to add a new spouse for coverage.

### THE INDEMNIFICATION OBLIGATION

The Agreement further provides that Mr. Smolinski and the Debtor "each indemnify the other and hold one another harmless from any and all claims of any nature whatsoever arising out of any debt incurred subsequent to December 1, 1990." At trial, the evidence showed that the Debtor warranted to Mr. Smolinski that she held no credit cards or lines of credit upon which Mr. Smolinski was liable. Notwithstanding the Debtor's representations, she kept Mr. Smolinski's name on numerous credit cards and lines of credit unbeknownst to Mr. Smolinski. The evidence further showed that after executing the Agreement and immediately prior to the Chapter 7 filing the Debtor intentionally ran up approximately $10,000.00 in charges on the credit cards and lines of credit upon which Mr. Smolinski is liable. The Debtor now seeks to discharge these debts. As a result, the creditors are now looking to Mr. Smolinski for payment.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Mr. Smolinski contends that any debts owed to him as a result of the cancellation of his insurance coverage should be excepted from discharge pursuant to sections 523(a)(5) & (6) of the Bankruptcy Code. In addition, Mr. Smolinski alleges that the Agreement's hold harmless language creates either a non-dischargeable supports obligation under § 523(a)(5) or a non-dischargeable provision of a martial settlement agreement under § 523(a)(15) regarding the credit card and line of credit debt. Mr. Smolinski further alleges that the Debtor's intentional, willful, and malicious actions should make the credit card and line of credit debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) & (6).

### 1. Non-dischargeability pursuant to 11 U.S.C. § 523(5).

■ Section 523(a)(5) of the Bankruptcy Code excepts from discharge debts to a former spouse:

> for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that—(B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 523(a)(5). What constitutes alimony, maintenance or support is determined under federal bankruptcy law and not state law. *In re Strickland,* 90 F.3d 444, 446 (11th Cir.1996). Therefore, an obligation can be deemed support under 11 U.S.C. § 523(a)(5) even if it would not be considered support under state law. *Id.* The burden of proof with respect to non-dischargeability is on the

objecting creditor. *In the Matter of Campbell,* 74 B.R. 805 (Bankr.M.D.Fla.1987). The standard of proof is by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

█ It is undisputed that the Agreement obligated the Debtor to provide insurance coverage, through her American Express Card/Membership, to the Plaintiff. Thus, this Court must determine whether the obligation of the Debtor to provide health insurance coverage for the Plaintiff is in the nature of support thereby making the obligation non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). *Strickland* at 446.

Several bankruptcy courts have determined that the obligation to provide health insurance to a child or former spouse is a non-dischargeable support obligation. *See e.g., In re Olson,* 200 B.R. 40 (Bankr.D.Neb. 1996); *In re Northcutt,* 158 B.R. 658 (Bankr. N.D.Ohio 1993); In re English, 146 B.R. 874 (Bankr.S.D.Fla.1992); *In re Stone,* 79 B.R. 633 (Bankr.D.Md.1987). The focus of each court's inquiry was on the function the obligation to provide insurance coverage served upon dissolution of the marriage. In *In re Stone,* Chief Judge Mannes characterized the issue of whether a debtor's obligation to maintain health insurance is non-dischargeable support as an "easy call." Judge Mannes stated:

It is hard to contemplate any area of one's daily life that is more susceptible to unanticipated financial burdens than that brought on by illness. The requirement that the [Debtor] provide all premiums for full medical and dental health insurance is clearly related to [the former spouse's] support and well being.

*Id.* at 640. This Court agrees. Accordingly, the Debtor's obligation to maintain health insurance for Mr Smolinski constitutes support and/or maintenance incurred in connection with or resulting from a marital settlement agreement and the obligation is non-dischargeable pursuant to § 523(a)(5) of the Bankruptcy Code. Moreover, any debt or loss incurred by the Plaintiff as a result of the Debtor's failure to maintain coverage is also non-dischargeable pursuant to § 523(a)(5).

**2. Non-dischargeability pursuant to 11 U.S.C. § 523(a)(15).**

█ The Bankruptcy Reform Act of 1994 amended section 523 of the Bankruptcy Code to add subsection (15) so that discharge obligations which would normally be dischargeable as property settlement debts under § 523(a)(5) would no longer be dischargeable. Section 523(a)(15) the Bankruptcy Code provides that a debtor is not discharged from any debt to a former spouse:

not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Under section 523(a)(15), the debt is presumed to be non-dischargeable unless the debtor proves that the debtor does not have the ability to pay the debt or that the benefit to the debtor of a discharge outweighs the detriment to the non-debtor. The intent is to make the discharge of these debts more difficult for the debtor. *In re Cleveland,* 198 B.R. 394, 397–98 (Bankr.N.D.Ga.1996); *In re Anthony,* 190 B.R. 433, 436 (Bankr.N.D.Ala.1995).

█ The hold harmless clause of the Agreement made each party responsible for his or her individual debts. Thus, the Debtor had a duty to pay the particular debts she alone incurred. In the instant case, the debt in question is the obligation of the Debtor to pay for the purchases that she made. Because the Debtor seeks to discharge these debts as a result of her Chapter 7 bankruptcy proceeding, the creditors are asserting

claims against Mr. Smolinski for the cost of the items purchased by the Debtor. However, it is clear from the Agreement that the Debtor and Mr. Smolinski were to bear their own individual debts and hold the other harmless from payment. Therefore, this Court concludes that the Debtor incurred these debts in connection with the divorce within the meaning of § 523(a)(15) and the Debtor bears the burden of proving that the debts should be discharged. *In re Schmitt*, 197 B.R. 312, 316 (Bankr.W.D.Ark.1996); *Matter of Cleveland,* 198 B.R. 394, 397–98 (Bankr.N.D.Ga.1996).

This Court finds that for the purposes of § 523(a)(15), the Debtor failed prove that she does not have the ability to meet her hold harmless obligations arising from the Agreement. In addition, the Debtor failed to prove that the benefit to her of discharging these obligations would outweigh the detrimental effect a discharge would have on Mr. Smolinski. Therefore, since the debts were incurred in connection with the Debtor's divorce from Mr. Smolinski and the Debtor cannot meet either exception of § 523(a)(15), the Debtor is not entitled to discharge her indemnity obligations to Mr. Smolinski concerning either the credit card or line of credit obligations. *In re Schmitt; Matter of Cleveland.*

### 3. Non-dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A).

■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge debts:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). To prevail under 523(a)(2)(A) the Plaintiff must prove, by a preponderance of the evidence, the following:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied on such representation;

(3) the reliance was reasonably founded; and

(4) the creditor sustained a loss as a result of the representation.

*In re Jones,* 176 B.R. 629 (Bankr.M.D.Fla. 1995); *In re Baietti,* 189 B.R. 549 (Bankr. D.Me.1995).

■ In the instant case the Debtor represented to Mr. Smolinski in the Agreement that she would hold him harmless for any debt which was her responsibility. As indicated above, the evidence showed that the Debtor warranted that she held no credit cards and had access to no lines of credit upon which Mr. Smolinski was liable. Mr. Smolinski reasonably relied on these representations which were clearly false and made with the intent to deceive him. The evidence further showed that the Debtor knowingly and intentionally ran up the debt on the credit cards and lines of credit and that Mr. Smolinski has sustained a loss. Thus, Mr. Smolinski has proven each and every element under § 523(a)(2)(A) and, accordingly, Mr. Smolinski's objection to dischargeability under § 523(a)(2)(A) of the Debtor's obligations to indemnify Mr. Smolinski for the credit card and line of credit obligations is sustained.

### 4. Non-dischargeability pursuant to 11 U.S.C. § 523(a)(6).

■ Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To prevail under 523(a)(6), Mr. Smolinski must prove by a preponderance of the evidence that the Debtor's conduct was both willful and malicious. *In re Dale,* 199 B.R. 1014 (Bankr. S.D.Fla.1995) *citing Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988) *and In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989). A wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse constitutes willful and malicious injury. *Id.; In re Jones,* 176 B.R. 629 (Bankr.M.D.Fla.1995). According to the Eleventh Circuit, "a debtor is responsible for a 'wilful' injury when he or she commits an intentional act the purpose of

which is to cause injury or which substantially certain to cause injury." *In re Walker*, 48 F.3d 1161, 1165 (11th Cir.1995); *In re Pouliot*, 196 B.R. 641, 652 (Bankr.S.D.Fla.1996).

■ The evidence in this case clearly showed that the Debtor had previously warranted to Mr. Smolinski that she had no credit cards or lines of credit on which his name remained. Despite this fact, the Debtor intentionally and wilfully ran up the debt on the line of credit and credit cards prior to her bankruptcy filing with full knowledge that Mr. Smolinski remained liable. The evidence further showed that the Debtor intentionally canceled Mr. Smolinski's insurance coverage despite her continuing obligation to maintain the coverage. Therefore, this court finds that the Debtor intentionally took actions the purpose of which were to cause Mr. Smolinski injury and which were substantially certain to cause Mr. Smolinski injury. As a result of the Debtor's willful and deliberate actions relating to the credit cards, lines of credit, and insurance coverage, Mr. Smolinski has been injured. Thus, Mr. Smolinski has proven, by a preponderance of the evidence, the elements of § 523(a)(6). Accordingly, Mr. Smolinski's objections pursuant to 11 U.S.C. § 523(a)(6) are sustained.

### CONCLUSION

The Debtor's obligation to provide Mr. Smolinski with health insurance coverage is a non-dischargeable support obligation pursuant to 11 U.S.C. § 523(a)(5). The debts relating to the credit cards and lines of credit are non-dischargeable pursuant to 11 U.S.C. § 523(a)(15) as a result of the hold harmless provision of the Agreement and the Debtor's failure to prove that the debts should be discharged. The Debtor's indemnification of Mr. Smolinski for the credit card and line of credit debt are also non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) based upon the Debtor's intentional fraud, false pretenses and/or misrepresentations. Finally, all the debts at issue in the instant case are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) because absent the Debtor's willful and malicious conduct, these debts would not exist. Accordingly, Mr. Smolinski's objections pursuant to 11 U.S.C. § 523(a)(2)(A), (5), (6), and (15) are sustained. This Court will issue separate Final Judgment in accordance with F.R.B.P. 9021 contemporaneously herewith.

### FINAL JUDGMENT

**THIS MATTER** came before the Court on March 26, 1997, upon the Complaint of the Plaintiff, Gary M. Smolinski, objecting to dischargeability of certain debts of the Debtor, Cynthia M. Arnott, pursuant to 11 U.S.C. § 523(a)(2)(A), (5), (6) and (15). In accordance with F.R.B.P. 9021 and this Court's Findings Of Fact And Conclusions Of Law entered contemporaneously herewith, the Court hereby enters the following Final Judgment:

1. The Debtor's obligation to provide the Plaintiff with health insurance is a non-dischargeable support obligation pursuant to 11 U.S.C. § 523(a)(5). Any loss sustained by the Plaintiff as a result of the cancellation of his insurance is also a non-dischargeable support obligation pursuant to 11 U.S.C. § 523(a)(5).

2. The Debtor's obligation to indemnify the Plaintiff for any credit card and line of credit debts pursuant to the hold harmless provision of the Marital Settlement Agreement is non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

3. The Debtor's obligation to indemnify the Plaintiff for any credit card and line of credit debts pursuant to the hold harmless provision of the Marital Settlement Agreement is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) based upon the Debtor's fraud, false pretenses, and misrepresentations to the Plaintiff.

4. The Debtor's obligation to indemnify the Plaintiff for any credit card and line of credit debt pursuant to the hold harmless provision of the Marital Settlement Agreement is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) based upon the Debtor's

willful and malicious conduct which has caused injury to the Plaintiff and the Plaintiff's property. In addition, any loss sustained by the Plaintiff as a result of the cancellation of the insurance is also non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).